IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

PHILLIP MARTIN,                          )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )       Case No. CIV-06-1117-D
                                         )
CORNELL COMPANIES, INC., *et al.*,       )
                                         )
                    Defendants.          )

# O R D E R

Before the Court is Defendants' Subsequent Motion for Summary Judgment [Doc. No. 100],

which seeks a judgment as a matter of law on all remaining claims in this civil rights action under

42 U.S.C. § 1983 by a former inmate of the Great Plains Correctional Facility ("GPCF").[1] Plaintiff,

who appears with volunteer counsel, has responded to the Motion, which is at issue.

Pursuant to prior orders adopting findings and recommendations issued by Magistrate Judge

Robert E. Bacharach pursuant to 28 U.S.C. § 636(b)(1)(B), the following claims remain pending:

retaliation for exercise of First Amendment rights; conspiracy to retaliate; denial of access to

medical records; defamation; and violation of the Oklahoma Constitution. The following defendants

remain: Cornell Companies, Inc. ("CCI"); Warden Sam Calbone; Nurse Tillie; Nurse Ledford;

Richard Barger; C. Howell; Major Steve DeVaughn; Lt. Dwayne Brannan; and Capt. L. Garrison.

Although Defendants have previously filed dispositive motions, the arguments presented in support

---

[1] Defendants purport to "incorporate by reference the findings of the Special Report" filed pursuant to *Martinez v. Aaron*, 570 F.2d 317 (1978). *See* Defs.' Motion at 1. Under local court rules, a party moving for summary judgment must "refer with particularity to those portions of the record upon which movant relies." *See* LCvR56.1(b). Thus, this general reference is ineffectual, and the Court considers only the portions of the Special Report to which Defendants refer with particularity in their brief.

of this Motion are before the Court for the first time for consideration on the merits.[2]  Defendants

seek summary judgment on the following grounds:  (1) Plaintiff lacks evidence to establish his

claims of retaliation and conspiracy to retaliate; (2) Plaintiff has no legally cognizable claim for

denial of access to medical records; (3) the defamation claim is time barred by Oklahoma's one-year

statute of limitations; (4) Plaintiff has failed to identify a state constitutional violation for which he

seeks a remedy that is not subsumed by a § 1983 claim for violation of the federal Constitution; and

(5) Plaintiff lacks evidence of personal participation in any alleged violation by certain defendants

(CCI, Calbone, Tillie and Ledford) that would support a § 1983 claim against them.

　　　In response to the Motion, Plaintiff concedes that Nurse Tillie and Nurse Ledford "should

be dismissed from the case."  *See* Pl.'s Resp. [Doc. No. 107] at 15.  Further, Plaintiff implicitly

concedes the second and fourth issues by failing to address them and failing to oppose summary

judgment on his claims regarding access to medical records and any violation of the Oklahoma

Constitution.[3]  Therefore, because Plaintiff fails to identify any fact or to argue any legal authorities

precluding summary judgment on these issues, the Court finds that Defendants are entitled to

summary judgment on Plaintiff's claims regarding access to his medical records and violation of the

Oklahoma Constitution.  The Court thus proceeds to address only the retaliation, conspiracy, and

defamation claims regarding the remaining defendants.

## Standard of Decision

---

[2]  The Court previously declined to consider similar arguments that were raised for the first time in an objection to Judge Bacharach's Report and Recommendation and advised Defendants to "address their arguments to Judge Bacharach in the first instance when this matter is recommitted to him for further proceedings."  *See* Order 7/19/07 [Doc. No. 69] at 3.  After the matter was re-referred to Judge Bacharach, however, Defendants filed a motion for summary judgment without prior permission, which was stricken for noncompliance with LCvR56.1(a), and they did not move for leave to re-file the motion.

[3]  By noting Plaintiff's concession of insubstantial claims, the Court intends no criticism of his volunteer counsel.  The Court commends counsel for the exercise of his professional judgment and his effort to advocate effectively the substantial issues.

Summary judgment is appropriate if the pleadings, affidavits, depositions, and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. Although a district court has discretion to go beyond referenced portions of the supporting material, it is not required to do so. *Id.* at 672.

**Statement of Undisputed Facts**[4]

Plaintiff is an inmate within the Oklahoma Department of Corrections ("DOC"). From July 29, 1997 until January 14, 2005, Plaintiff was imprisoned at GPCF. Defendant CCI owns and operates GPCF, and is under contract with the Oklahoma Department of Corrections. On or about November 2, 2004, a unit-wide search for contraband was conducted in the GPCF unit where Plaintiff was housed.[5] Certain items were confiscated from Plaintiff, including books from the GPCF library which contained notes and a map reflecting instructions for the introduction of contraband into the prison. Plaintiff immediately filed a grievance regarding the confiscation of the items, seeking their return.

Based upon the confiscated material, CCI staff asserted two offense reports against Plaintiff. Hearings were conducted, and Plaintiff was initially found guilty of both offenses. As a result of these determinations, Plaintiff lost 60 days of earned credits and was reduced to Level I status for 45 days,[6] and lost 365 days of earned credits and was reduced to Level I status for 90 days, respectively. Plaintiff appealed both determinations, and both were ultimately reversed and expunged by the DOC. However, at some point a negative notation was placed in Plaintiff's DOC records by CCI staff to the effect that Plaintiff was a "management problem."

Plaintiff asserts that the offense reports and the subsequent determinations of his guilt constitute retaliation and conspiracy to retaliate against him because: 1) he requested the return of

---

[4] These facts include both undisputed facts stated by Defendants in their supporting brief and additional facts stated by Plaintiff in his response brief, to which Defendants have made no reply.

[5] Although Plaintiff does not admit Defendants' factual contention that the search was unit-wide, Plaintiff fails to effectively controvert Defendants' assertion in this regard.

[6] An inmate's classification level affects the rate at which good time credit is earned.

property confiscated during the unit-wide search; 2) he filed lawsuits against CCI;[7] and 3) he assisted other inmates with their individual lawsuits against CCI.  *See* Pl.'s Response [Doc. 107] at 5, ¶ 8.

## Discussion

### A.    Retaliation

"An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper."  *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) (internal quotation omitted); *see Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (prison officials may not retaliate against an inmate because of his exercise of a constitutional right "even where the action taken in retaliation would be otherwise permissible"); *accord Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  The Tenth Circuit has summarized the elements of a First Amendment retaliation claim not grounded in the public employment context as follows:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation omitted); *see Perez v. Ellington*, 421 F.3d 1128, 1131-32 (10th Cir. 2005).  Defendants challenge Plaintiff's ability to prove the first and third elements of his § 1983 claim of retaliation.  Specifically, Defendants

---

[7] Both sides request that the Court take judicial notice of the Court's records regarding Plaintiff's previous litigation.

contend Plaintiff cannot establish that he engaged in protected activity or that the adverse action taken against him was motivated by retaliation.[8]

### 1.     Constitutionally Protected Activity

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."  *Smith*, 899 F.2d at 947.  Here, Defendants concede "Plaintiff's claim that he was retaliated against for personally filing lawsuits may support a retaliation claim."  *See* Defs.' Motion [Doc. 100] at 6.   Further, the filing of inmate grievances is constitutionally protected.  *See Mallard v. Tomlinson*, 206 F. App'x 732, 737 (10th Cir. 2006) ("We find no fault with the argument that an inmate's right to file grievances is clearly protected . . . ."); *see also Purkey v. Green*, 28 F. App'x 736, 746 (10th Cir. 2001).[9]  However, an inmate "does not have a protected interest in providing legal representation to other inmates."  *Smith*, 899 F.2d at 950; *accord  Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (no First Amendment right to provide legal assistance to fellow inmates).

Based upon the principles set forth above, only Plaintiff's personal lawsuits or grievances may give rise to a claim of retaliation.   Thus, his efforts on behalf of other inmates, namely, Mr. Heidbreder and Mr. Daniels, cannot form the basis of his allegations of retaliation.  With respect to his pursuit of his own claims, the Court – as requested by Plaintiff and Defendants – has reviewed its records regarding past litigation by Plaintiff.  Plaintiff's previous federal lawsuit was decided

---

[8] Defendants also assert, in a footnote, that "Plaintiff has not suffered any injury" because "Plaintiff's earned credits [that were lost as a result of allegedly retaliatory misconduct charges] were all restored."  *See* Defs.' Motion [Doc. 100] at 9 n.1.  This contention is disputed by Plaintiff.  *See* Plaintiff's Response [Doc. 107] at 5.  The Court has previously noted that "[a] loss of earned credits was not the only punishment Plaintiff received when he was initially convicted of the charges."  *See* Order 7/19/07 [Doc. 69] at 3.  Because Defendants do not address Plaintiff's other injuries, the Court declines to reach this issue.

[9] Unpublished opinions are cited pursuant to Fed. R. App. P. 32.1 and 10th Cir. R. 32.1(A).

against him on October 31, 2003.[10]   Further, as reflected in the Supplemental Report and

Recommendation in that case, Plaintiff's state court suit was dismissed on February 15, 2002, and

affirmed on appeal December 24, 2002.[11]   The search and subsequent events which form the basis

of Plaintiff's instant claims were initiated on November 2, 2004, over a year after the disposition of

Plaintiff's previous legal actions.   As is more fully addressed below in connection with the

retaliatory motive element, the evidence of record is insufficient to withstand summary judgment

on Plaintiff's retaliation claim.

### 2.        Retaliatory Motive

As the third element of his claim, Plaintiff must "prove that the actual motivating factor

behind defendants' actions was retaliation for his prior or current litigation.   He must prove that 'but

for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would

not have taken place."   *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).   A summary

judgment on the issue of retaliatory motive is inappropriate "where evidence is sufficient to support

an inference by a fair-minded jury that defendants took disciplinary action against [an inmate] based

at least in part on improper motives," including "circumstantial evidence of the suspicious timing

of his discipline, coincidental transfers of his witnesses and assistants, and an alleged pattern by

defendants of blocking his access to legal materials and assistance."   *Id*. at 949.

Plaintiff presents no direct evidence of retaliatory motive; nor does he point to circumstantial

evidence sufficient to raise a reasonable inference of motive to retaliate.

Unlike *Smith*, where action was taken against an inmate "immediately upon his return from

court," *id*. at 948, here, the unit-wide search in which items were confiscated from Plaintiff and the

---

[10] *Martin v. Ward*, Case No. CIV-03-320-F, Judgment [Doc. No. 19] (W.D. Okla. October 31, 2003).

[11] *Id*. Supplemental Report & Recom. [Doc. No. 16] at 3.

subsequent actions about which Plaintiff complains occurred over a year after the disposition of Plaintiff's legal actions.  The close temporal proximity between court action and prison punishment present in *Smith* is wholly lacking in the instant case.  Even some evidence of temporal proximity, standing alone, is insufficient to avoid dismissal (*Wright v. McCotter*, No. 98-4095, 1999 WL 76904, *1 (10th Cir. Feb. 18, 1999) (unpublished)); here, however, evidence of a sufficient temporal relationship between Plaintiff's access to the courts and the complained-of conduct is absent.  Nor does Plaintiff raise evidence of a pattern of interference with his access to legal materials or assistance.

Likewise, Plaintiff presents no direct evidence of retaliatory motive tied to his filing of a grievance after items were confiscated from him during the unit-wide search.  In the grievance, Plaintiff sought the return of the items.  Although the disciplinary action followed shortly after the filing of the grievance, this circumstantial evidence stands alone and, without more, is insufficient to withstand summary judgment.

Because there is insufficient evidence to support an inference by a fair-minded jury of retaliatory motive, summary judgment is proper regarding Plaintiff's retaliation claim.

**B.     Conspiracy to Retaliate**

To prevail on a § 1983 conspiracy claim, "'a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights.'"  *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (quoting *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir.1990)).  Although "direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances . . . , [proof] of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy:  agreement and concerted action."  *Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990); *see also Hunt v. Bennett*, 17

F.3d 1263, 1266 (10th Cir.1994) (to plead a § 1983 conspiracy, a plaintiff must "allege specific facts showing agreement and concerted action among [alleged co-conspirators]"); *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990) ("A civil conspiracy requires the combination of two or more persons acting in concert.").

The Court's determination that the record is deficient regarding Plaintiff's retaliation claim also in part supports a determination that a factual basis to support the existence of an agreement and concerted action toward retaliation is lacking. Further, after initially stating that he knew of no evidence of conspiracy to retaliate in connection with his pursuit of legal actions, Plaintiff ultimately points only to a nebulous conversation between Defendants DeVaughn and Barger which falls short of amounting to evidence demonstrating agreement and concerted action sufficient to withstand summary judgment. Defs.' Motion, Ex. 1, Martin dep., 44:13-17, 48:8-24. Thus, summary judgment is appropriate on the conspiracy claim.

## C.  Personal Participation

Defendants Sam Calbone and CCI also seek summary judgment "because Plaintiff has failed to show their personal participation" in the alleged constitutional violation underlying. *See* Defs.' Motion [Doc. 100] at 14. It is well settled that personal participation is an essential element of a § 1983 claim and "supervisor status by itself is insufficient to support liability." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *see Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To prove § 1983 liability of a supervisor, a plaintiff must establish "that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir.2001); *see also Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Similarly, a corporation cannot be held liable under § 1983 for

unauthorized acts of its agents under a *respondeat superior* theory.  In *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978), the Supreme Court held that municipal liability must be based on an "official municipal policy of some nature" that was the "direct cause" or "moving force" behind the constitutional violation; "there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).  The court of appeals has extended this doctrine to private § 1983 defendants, that is, private entities acting under color of state law.  *See Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1216 (10th Cir. 2003); *see also Smedley v. Corrections Corp*., 175 F. App'x 943, 946 (10th Cir. 2005).

Although the Court agrees with Defendants Calbone and CCI that the record is devoid of evidence of personal participation, because the Court has determined that summary judgment is proper regarding Plaintiff's § 1983 claims, Defendants' contention in this regard is moot.

**D.    Defamation**

Plaintiff's supplemental tort claim is governed by Oklahoma law and its one-year statute of limitations, Okla. Stat. tit. 12, § 95(4).  "[A]n action based on [a libel or slander] theory of recovery [must] be brought within one year of publication." *Colbert v. World Publ'g Co*., 747 P.2d 286, 288 (Okla. 1987); *see also Digital Design Group, Inc. v. Information Builders, Inc*.,  24 P.3d 834, 839 (Okla. 2001) ("a libel action generally accrues on the date of publication").[12]  However, under Oklahoma law, the common law discovery rule – which "allows the limitation period in certain tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury" – may apply to a libel claim "in limited situations, for example – when

---

[12]  Because Defendants do not dispute that the allegedly defamatory statement was published, the Court assumes that a publication occurred on the date shown by the summary judgment record.

the publication is likely to be concealed from the plaintiff or published in a secretive manner which would make it unlikely to come to the attention of the injured party." *Digital Design Group*, 24 P.3d at 839.   Although the Oklahoma courts have not ruled on the applicability of the discovery rule to statements in an inmate's institutional file, the Oklahoma Supreme Court has expressed approval of the rule's application in analogous circumstances:

> It has been applied to libel actions involving alleged defamatory reports filed with credit agencies; alleged defamatory statements placed in employees' personnel files; and alleged defamatory statements made in confidential business memoranda.  In these circumstances, the discovery rule is applied because the type of publication is not one in which a plaintiff would ordinarily have reason to suspect or even be presumed to know about – given the short limitations period for libel actions.

*Id*. at 839-40.  Further, the rationale for the discovery rule supports its application to a statement in a part of an inmate's institutional file that is unavailable to him.

> "The rule is applied to delay the running of the statute of limitations.  It, much like the doctrine of adverse domination, arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause.  The purpose of the rule is to exclude the period of time during which the injured party is reasonably unaware tha[t] an injury has been sustained so that people in that class have the same rights as those who suffer an immediate ascertainable injury."

*Id*. at 841 (quoting *Resolution Trust Corp. v. Grant*, 901 P.2d 807, 813 (Okla. 1995)).  When the discovery rule applies and the facts regarding discovery of the plaintiff's injury are disputed, "the question of when the plaintiff knew or should have known was a question of fact and a determination for the jury." *Id*. at 842.  The burden of proof that an action or claim is time-barred is upon the party asserting the defense." *Id*.

In this case, Plaintiff argues in opposition to summary judgment that he was unaware of the negative comment written in his file or its defamatory nature until he filed this lawsuit.  This argument is inconsistent with Plaintiff's deposition testimony, in which he stated that he was generally informed of the negative statements by his new case manager "when [he] got to

Holdenville," meaning the correctional facility to which he was transferred in January, 2005. *See* Defs.' Motion, Ex. 1, Martin dep. 62:8-12. Thus, assuming the discovery rule may apply, the undisputed facts shown by the summary judgment record nevertheless permit only one reasonable conclusion, that is, that Plaintiff knew or should have known about the alleged defamatory statements in his institutional file and any alleged injury more than one year before he commenced this action on October 12, 2006. Therefore, the Court finds as a matter of law that Plaintiff's defamation claim is time barred, and Defendants are entitled to summary judgment on this claim.

### Conclusion

For the above reasons, the Court finds that Defendants are entitled to summary judgment on all Plaintiff's claims.

IT IS THEREFORE ORDERED that Defendants' Subsequent Motion for Summary Judgment [Doc. No. 100] is GRANTED; further, Plaintiff's action against Defendants Tillie and Ledford is DISMISSED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 26th day of June, 2009.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE